1
2
3
4
5
6

Todd Slobin (admitted *PHV*)
tslobin@eeoc.net
Ricardo J. Prieto (admitted *PHV*)
rprieto@eeoc.net
Melinda Arbuckle (Bar No. 302723)
marbuckle@eeoc.net
SHELLIST | LAZARZ | SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

7
8
9
10

Allen R. Vaught (admitted *PHV*)
allen@vaughtfirm.com
VAUGHT FIRM, LLC
1910 Pacific Avenue, Suite 9150
Dallas, Texas 75201
Telephone: (214) 675-8603
Facsimile: (214) 261-5159

11
12

*Counsel for Plaintiffs and Proposed Class
and Collective Action Members*

13
14

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION – SANTA ANA**

| | |
|---|---|
| 15  SOFIA AVALOS, *et al.*, | **Case No.: 8:18-cv-00871-DOC** |
| 16      Plaintiffs, | **NOTICE OF PLAINTIFFS'** |
| 17      v. | **[UNOPPOSED] MOTION AND [UNOPPOSED] MOTION FOR APPROVAL OF FLSA SETTLEMENT** |
| 18  PAPA JOHN'S INTERNATIONAL, INC. | |
| 19 | Judge:    Hon. David O. Carter |
| 20      Defendant. | Date:     April 20, 2020 |
| 21 | Time:    8:30 a.m. Courtroom: 9D |

22
23
24
25
26
27
28

1    **PLEASE TAKE NOTICE** that on April 20, 2020 at 8:30 a.m. in

2    Courtroom 9D of this Court, located at the Ronald Reagan Federal Building,

3    United States Courthouse, 411 West Fourth Street, Santa Ana California 92701,

4    9th Floor, Plaintiffs Sofia Avalos, Louis Breazil, Jared Carroll, Alvin English and

5    Max Coover ("Plaintiffs"), on behalf of themselves and all others similarly situated

6    will and hereby do, move this Court to enter an order approving the attached

7    proposed FLSA Settlement Agreement, and approve all related settlement notices

8    and documents. Plaintiffs base their Motion on this Notice of Motion, the attached

9    Memorandum in Support of Motion for Approval of FLSA Settlement, the

10   declaration filed herewith, the documents and pleadings on file in this action, and

11   any other evidence that may be presented at the time the Court hears this Motion.

12

13                                    Respectfully submitted on behalf of
                                      Plaintiffs,

14   Dated: March 23, 2020            By:    s/Melinda Arbuckle
                                             Melinda Arbuckle
15

16                                    **BARON & BUDD, P.C.**
                                      Allen R. Vaught (admitted *Pro Hac Vice*)
17                                    avaught@baronbudd.com
                                      Melinda Arbuckle (Cal. Bar No. 302723)
18                                    marbuckl@baronbudd.com
                                      15910 Ventura Boulevard, Suite 1600
19                                    Encino, California 91436
                                      Telephone: (818) 839-6506
20                                    Facsimile: (818) 986-9698

21                                    **SHELLIST | LAZARZ | SLOBIN LLP**
                                      Todd Slobin (admitted *Pro Hac Vice*)
22                                    tslobin@eeoc.net
                                      Ricardo J. Prieto (admitted *Pro Hac Vice*)
23                                    rprieto@eeoc.net
                                      11 Greenway Plaza, Suite 1515
24                                    Houston, Texas 77046
                                      Telephone: (713) 621-2277
25                                    Facsimile: (713) 621-0993

26                                    *Counsel for Plaintiffs and Proposed Class
                                      and FLSA Collective Action Members*

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………...…………1

II.   OVERVIEW OF THE PROPOSED SETTLEMENT…………………... 4

    **A.** Terms of the Settlement…………………………………………… 4

    **B.** Notice to the Participating Members and Administration of the Settlement
…………………………………………………………………………5

III.  ARGUMENTS AND AUTHORITIES………………………………… 6

       **A.** Legal Standard for Approval of FLSA Only Settlements……….. 6

       **B.** The Proposed FLSA Settlement Represents a Compromise of a Bona Fide Dispute, and Provides a Fair and Reasonable Resolution of Plaintiffs' Claims……………………………………………...10

          **1.** Disputed Issues in this Case, Including Defendant's Status as an Employer of Certain Plaintiffs, the Enforceability of Arbitration Agreements Signed by Collective Action Members, and the Applicability of Liquidated Damages Demonstrate the Parties' Entitlement to Settle the Lawsuit……………………………..10

            **a.** The Joint Employer Dispute Led the Parties to Resolve the Claims of PJ I Non-Exempt Hourly-Paid Employees Who Worked at Corporate Owned and Operated Stores as a Collective and to Resolve by Way of Non-Cash Relief the Individual Claims of Opt-in Plaintiffs Who Filed Consents In this Case But Were Not Employed by PJI at a PJI Corporate-Owned Store………………………………….. 11

            **b.** The Parties Disputed Whether Class/Collective Relief Was Precluded for Approximately 77,000 Individuals Who Purportedly Signed Enforceable Arbitration Agreements..12

c.  The Parties Disputed Liability Due to Defendant's Disclaimer on the Training Website that Time Spent Completing Online Training Was Compensable…………………………………**13**

d.  Analyzing Training Records Maintained by Cornerstone and Pay Records Maintained by Defendant Led to Significant Disputes Regarding the Proper Measure of Damages in this Case……………………………………………………… **14**

2.  The Totality of the Circumstances Demonstrates that the Proposed FLSA Settlement Is Fair and Reasonable, Provides Meaningful Relief to the Putative Collective Action Members, and Should Be Approved…………………………………………… **15**

a.  The Proposed Net Settlement Allocates $2,105,400 to the Approximately 120,000 Putative Collective Action Members, Representing Approximately 60% of Plaintiffs' Three Year FLSA Exposure Model, and Reflecting Discounts for Individuals Who Signed Arbitration Agreements. ………… **15**

b.  The Parties Completed Sufficient Discovery to Appropriately Evaluate the Claims and Defenses that Affect this Proposed FLSA Settlement...………..………………………… **16**

c.  The Substantial Risks Presented by the Lawsuit Necessitated the Compromise of the Putative Collective Action Members' Alleged Back Wages Under the Proposed FLSA Settlement ……………………………...…………………………..**17**

d.  The Scope of the Release Is Appropriately Tailored to the Factual Predicate of the Lawsuit…………………………..**17**

e.  Counsel for Plaintiffs View the Proposed FLSA Settlement as a Superior Result Given the Risks Associated with the Case..**18**

    **f.** The Parties Negotiated the Proposed FLSA Settlement Over Two Separate Arms'-Length Adversarial Mediations – The Settlement Was Not Obtained by Fraud or Collusion.……… **19**

    **g.** Service Awards...……………………………………… **19**

    **h.** The Court Should Approve Attorneys' Fees of Thirty Percent (30%) ...………………………………………………... **20**

    **i.** The Court Should Approve $80,000 in Costs ……………… **23**

**IV.** CONCLUSION…………………………………………….. **24**

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Ambrosino v. Home Depot U.S.A., Inc.*,
　No. 11cv1319 L(MDD), 2014 WL 3924609 n.1 (S.D. Cal. Aug. 11, 2014) ...7, 23

*Anderson v. Mt. Clemens Pottery Co.*,
　328 U.S. 680 (1946) ............................................................14

*Aros v. United Rent*als, Inc.,
　Nos. 10 Civ. 73, 11 Civ. 1281, 11 Civ. 1282, 11 Civ. 1283, 11 Civ. 1284, and 11
　Civ. 1285, 2012 WL 3060470 (D. Conn. July 26, 2012) ......................................9

*Beckman v. KeyBank, N.A.*,
　293 F.R.D. 467 (S.D.N.Y. 2013)..................................................10

*Bellinghausen v. Tractor Supply Co.*,
　306 F.R.D. 245 (N.D. Cal. 2015) ...............................................20

*Blum v. Stenson*,
　465 U.S. 886 (1984) ............................................................22

*Boeing v. Van Gemert*,
　444 U.S. 472 (1980) ............................................................22

*Bozak v. FedEx Ground Package Sys., Inc.*,
　No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014) ..........................9

*Buccellato v. AT&T Operations, Inc.*,
　No. 10 Civ. 00465, 2011 WL 3348055 (N.D. Cal. June 30, 2011).....................19

*Campanelli v. Hershey Co.*, No. C,
　08-1862 BZ, 2011 WL 3583597 (N.D. Cal. May 4, 2011)..............................7, 21

*Campbell v. Advantage Sales & Mktg. LLC*,
　No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012)........................9

*Casey v. City of Cabool*,
　12 F.3d 799 (8th Cir. 1993) ....................................................20

*Dashiell v. Cty. of Riverside*,
   No. EDCV 15-00211 JGB (SPx), 2018 WL 3629915 (C.D. Cal. July 19, 2018)
   ................................................................................................ 11, 17, 18, 19

*Dees v. Hydradry, Inc.*,
   706 F. Supp. 3d 1227 (M.D. Fla. 2010) ...............................................8

*Dixon v. Zabka*,
   No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013) ...........................9

*Fegley v. Higgins*,
   19 F.3d 1126 (6th Cir. 1994) ...............................................20

*Galeener v. Source Refrigeration & HVAC, Inc.*,
   2015 WL 12976106 (N.D. Cal. 2015)...............................................19

*Genesis Healthcare Corp. v. Symczyk*,
   133 U.S. 66 (2013) ...............................................9

*Glass v. UBS Fin. Servs., Inc.*,
   No. 06 Civ. 4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)...........................20

*In Re Domino's Pizza Inc.*,
   2018 WL 4757944 (S.D.N.Y. Sept. 30, 2018) .......................................12

*In Re Jimmy John's Overtime Litig.*,
   2018 WL 3231273 (N.D. Ill. June 14, 2018) .......................................12

*Johnston v. Spacefone Corp.*,
   706 F.2d 1178 (11th Cir.1983) ...............................................21

*Khait v. Whirlpool Corp.*,
   No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).....................8, 9

*Khanna v. Inter-Con Sec. Sys., Inc.*,
   No. CIV S-09-2214 KJM GGH, 2012 WL 4465558 (E.D. Cal. Sept. 25, 2012) ..7

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...........................23

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
   No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016)...........................9

*Lee v. The Timberland Co.*,
   No. 07 Civ. 2367, 2008 WL 2492295 (N.D. Cal. June 19, 2008)........................8

*Lewis v. Vison Value, LLC*,
    No. 1:11-cv-01055-LJO-BAM, 2012 WL 2930867 (E.D. Cal. July 18, 2012) .....7

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ........................................................................6, 7

*McKenna v. Champion Int'l Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ..................................................................10

*Mitchell v. Lublin, McGaughy & Assocs.*,
    358 U.S. 207 (1959) ...................................................................................21

*O'Connor v. Oakhurst Dairy*,
    No. 2:140cv000192-NT, 2015 WL 2452678 (D. Maine 2015) ...........................9

*Odil v. Evans*,
    No. 3:01CV70 (DF), 2005 WL 3591962 (M.D. Ga. 2005)...........................21

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .......................................................................22

*Perdue v. Kenny A.*,
    130 S. Ct. 1662 (2010)...............................................................................20

*Pike v. Cty. of San Bernadino*,
    No. EDCV 17-1680, 2019 WL 8138439 (C.D. Cal. Nov. 25, 2019).......... passim

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) .....................................................................23

*Rodriguez v. SGLC Inc.*,
    2014 WL 229221 (E.D. Cal. 2014) ..............................................................22

*Root v. Ames Dep't Stores, Inc.*,
    989 F. Supp. 274 (D. Mass. 1997)................................................................9

*Ross v. U.S. Bank Nat'l Ass'n*,
    No. 07 Civ. 2951, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010).....................20

*Salazar v. McDonald's Corp.*,
    944 F.3d 1024 (9th Cir. 2019) .....................................................................12

*Saleh v. Valbin Corp.*,
    No. 17-CV-00593-LHK, 2018 WL 6002320 (N.D. Cal. Nov. 15, 2018)............16

*Seguin v. Cty. of Tulare*,
    No. 1:16-cv-01262-DAD-SAB, 2018 WL 1919823 (E.D. Cal. Apr. 24, 2018) 7, 8

*Selk v. Pioneers Mem'l Healthcare Dist.*,
    159 F. Supp. 3d 1164 (S.D. Cal. 2016) .................................................. 8, 9, 18, 19

*Spencer v. Cent. Servs., LLC*,
    2012 U.S. Dist. LEXIS 4927, *11 (D. Md. Jan. 13, 2012) .................................21

*Stevens v. Safeway Inc.*,
    No. CV 05-01988 MMM (SHx), 2008 WL 11496497 (C.D. Cal. Feb. 25, 2008) 8

*Vandervort v. Balboa Capital Corp.*,
    8 F.Supp.3d 1200 (C.D. Cal. 2014) ....................................................................23

*Vedachalam v. Tata Consultancy Servs.*,
    No. 06 Civ 0963, 2013 WL 3929129 (N.D. Cal. July 18, 2013) .......................19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................................22

*Woods v. N.Y. Life Ins. Co.*,
    686 F.2d 578 (7th Cir. 1982) ..............................................................................10

*Yue Zhou v. Wang's Rest.*,
    No. 05 Civ. 0279, 2007 WL 172308 (N.D. Cal. Jan. 17, 2007)............................9


**Statutes**

29 U.S.C. § 216(b) ...................................................................... 9, 20, 23


**Rules**

FRCP 23 ..................................................................................................6, 8


**Other Authorities**

William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) ....................8

1
2

## MEMORANDUM IN SUPPORT OF MOTION
## FOR APPROVAL OF FLSA SETTLEMENT

3
4
5

NOW COME Plaintiffs Sofia Avalos, Louis Breazil, Jared Carroll, Alvin English and Max Coover, by and through counsel, who file this Unopposed Motion for Approval of FLSA Settlement.

6
7
8
9
10
11
12
13
14
15
16

Plaintiffs respectfully request that the Court enter an order approving the proposed FLSA Settlement that Plaintiffs and Defendant Papa John's International, Inc. ("Defendant" or "PJI") (Plaintiffs and PJI collectively referred to as the "Parties") have negotiated. (*See* Ex. A, the "proposed FLSA Settlement" or "Settlement Agreement.") Counsel for the Parties believe the proposed FLSA Settlement represents a fair and reasonable resolution of the claims at issue in this case, and will provide substantial relief to the FLSA Settlement Collective Action Members who will benefit from the proposed FLSA Settlement. The Settlement Agreement also provides for fair and reasonable attorneys' fees and costs to counsel for Plaintiffs. For the below reasons, the Parties believe the Court should enter an order approving the proposed FLSA Settlement.

17

## I.    INTRODUCTION

18
19
20
21
22
23
24
25
26
27

Plaintiffs filed this lawsuit against PJI on May 17, 2018. (ECF No. 1 (Pls.' Original Compl.).) In their Original Complaint, Plaintiffs alleged that Defendant violated the FLSA by requiring Plaintiffs and similarly situated employees to complete mandatory training without compensation. (*See id.*, p. 1; ¶ 1.) Plaintiffs claimed this policy and/or practice of allegedly failing to compensate employees for time spent completing mandatory training was a violation of various federal and state laws. (*See id.*, pp. 24-37; ¶¶ 107-161.) Plaintiffs sought to represent both employees of PJI's corporate-owned stores and (under a theory that PJI is a "joint-employer") Papa John's franchisees. To date, 100 individuals have opted-in to this lawsuit. (Slobin Decl., ¶ 8.)

28

1    Defendant vigorously opposed Plaintiffs' claims, including denying that

2    Defendant was a joint-employer of Plaintiffs, who were employed at various

3    restaurants that were independently owned and operated by Defendant's

4    franchisees, as well as any other individuals who were employed at various

5    restaurants that were independently owned and operated by Defendant's

6    franchisees. (*See, e.g.*, ECF No. 29 at p. 2 & ECF No. 62, pp. 6-7 (Def.'s Answer

7    to Pls.' First Am. Compl.), ¶¶ 41-44, 54.) Defendant also denies that class or

8    collective action claims were appropriate, and denies that it had failed to pay any

9    due and owing wages to any employee at a corporately-owned or -operated

10   location, or that it maintained any pay or employment policies or practices that

11   failed to comply with the FLSA or any state wage and hour laws. (ECF No. 62, pp.

12   12, 16-17, ¶¶ 128, 181-182.)

13   The Parties engaged in extensive early motion practice, including the

14   following briefing:

15   • Defendant's Motion to Dismiss (ECF No. 29 (Def.'s Mot. to

16   Dismiss); ECF No. 44 (Pls.' Resp. in Opp'n to Def.'s Mot. to

17   Dismiss); ECF No. 46 (Minute Order Den. Def.'s Mot. to Dismiss));

18   • Defendant's Motion for Order Limiting Plaintiffs' Communications

19   with Putative Class Members (ECF No. 40 (Def.'s Mot.); ECF No. 54

20   (Pls.' Resp. in Opp'n); ECF No. 56 (Def.'s Notice of Withdrawal of

21   Mot.));

22   • Defendant's Motion to Transfer Venue (ECF No. 63 (Def.'s Mot.);

23   ECF No. 80 (Pls.' Resp. in Opp'n); ECF No. 92 (Def.'s Reply in

24   Supp.));

25   • Plaintiffs' Motion for Conditional Certification of FLSA Collective

26   Action (ECF No. 65 (Pls.' Mot.); ECF No. 81 (Def.'s Resp. in

27   Opp'n); ECF No. 91 (Pls.' Reply in Supp.)); and

28

- Plaintiffs' Motion to Strike Untimely Filed Declarations (ECF No. 85 (Pls.' Mot.); ECF No. 96 (Def.'s Resp. in Opp'n); ECF No. 100 (Pls.' Reply in Supp.)).

The above were all filed between July 5, 2018, and September 17, 2018.

On July 31, 2019, the Parties informed the Court that they had scheduled a mediation of the corporate employees' claims. (*See* ECF No. 190 (Joint Stipulation to Submit to Mediation and to Continue Scheduling Conference to October 25, 2019).) Thereafter, on September 13, 2019, Defendant produced millions of time and pay records for the entire putative collective action of corporate employees, consisting of approximately 120,000 individuals. (Slobin Decl., ¶ 9.) Counsel for Plaintiffs engaged a respected expert to process that data and apply calculations to determine the potential unpaid minimum or overtime wages that potentially resulted from Defendant's alleged failure to pay for all of its employees' time spent completing mandatory online training. (*Id.*, ¶ 10.)

On October 14, 2019, the Parties engaged in a mediation before Mr. Hunter Hughes in Atlanta, Georgia. (*See* ECF No. 206 (Suppl. Joint Rule 26(f) Report).) The Parties reached an impasse, and elected to continue negotiations before a second mediator, Mr. Dennis Clifford. (Slobin Decl., ¶ 13.)

On December 18, 2019, the Parties engaged in a second mediation before Mr. Clifford in Louisville, Kentucky. (*Id.*, ¶ 14.) After the conclusion of this full day of mediation, the Parties reached an impasse, but, on December 27, 2019, the Parties later reached a settlement in principle of the case subject to a mediator's proposal and through extensive continued negotiations. (*Id.*)

Since having reached the settlement in principle, the Parties have agreed to the settlement terms of the proposed FLSA Settlement, and have drafted the necessary documentation of the Settlement, proposed notice to the putative settlement collective action members, and this Motion for Approval. Accordingly,

Plaintiffs respectfully submit the proposed FLSA Settlement for approval, and request that notice of the settlement issue to the approximately 120,000 putative settlement collective action members who were employed by PJI at a corporate-owned store (the "Participating Plaintiffs") so that the Participating Plaintiffs can determine whether they would like to obtain monies under the Settlement.

## II.    OVERVIEW OF THE PROPOSED SETTLEMENT

### A.    Terms Of The Settlement

The Settlement Agreement (attached as Exhibit A), establishes a maximum gross settlement amount of $3,400,000.00 (the "Gross Settlement Fund"), including from which individual settlement payments will be paid to Participating Plaintiffs who properly sign and return a Consent, Claim Form and Release ("Claim Form"), a $5,000.00 service award will be paid to the Collective Action Representative (Sarah Ponder), and attorneys' fees and litigation costs will be paid to Plaintiffs' Counsel.

The Gross Settlement Fund will be allocated as follows:

1. The Settlement Agreement provides that Participating Plaintiffs who properly sign and return a Claim Form will receive settlement payments from a net amount, which, after deducting the amounts set forth below, has been calculated to total $2,105,400.00; (Ex. A, ¶ 3.6; Slobin Decl., ¶ 23.)

2. As discussed further below, those individuals who submitted a consent to join in the litigation but were not employed by PJI at a PJI corporate-owned store (the "Franchisee Plaintiffs") shall be entitled to receive a Gift Card in the amount of $50.00; (Ex. A, ¶ 3.3)

3. Defendant will pay $1,020,000.00 (30% of the Gross Settlement Fund) to counsel for Plaintiffs for reasonable attorneys' fees, and a sum not to exceed $80,000.00 for costs of litigation, subject to approval by the

Court. The Participating Plaintiffs are not responsible for payment of attorney's fees; (Ex. A, ¶ 3.5) and

4. Defendant will pay up to $185,000.00 for costs of administration of the settlement. (Ex. A, ¶ 5.1)

5. <u>Consideration</u>.

    a) <u>For Participating Plaintiffs</u>: Each Participating Plaintiff who properly signs and returns a Claim Form, will be paid a proportionate share of the Net Settlement Fund based upon: (1) the length of their employment at a PJI corporate owned store, and (2) whether or not they are subject to an allegedly enforceable arbitration agreement with Defendant. (Ex. A, ¶ 3.6)

    b) <u>For Franchisee Plaintiffs</u>: Each Franchisee Plaintiff who timely submits a release shall be entitled to receive a Gift Card in the amount of $50.00. (Ex. A, ¶ 3.3)

**A.    Notice to the Participating Plaintiffs and Administration of the Settlement.**

Within thirty-five days of the effective date[1] of the Settlement Agreement, the Settlement Administrator will mail the applicable Settlement Notice to the Participating Plaintiffs, based on their respective last-known residential address to be provided to the Settlement Administrator by Defendant. (Ex. A, ¶ 5.2.2) If any Settlement Notice is returned by the postal service as undeliverable thereafter, the Settlement Administrator shall make a final attempt to ascertain the intended recipient's proper address via one skip-trace search. (*Id.*)

---

[1]    Per § 2.3 of the Settlement Agreement, the effective date is "the later of: (1) the Court's approval of the Settlement, assuming no objection has been filed; (2) the time for an appeal has expired without the filing of any appeal, in the event that an objection has been filed; or (3) the final resolution of any appeal, writ, or challenge to the Settlement upholding the Settlement that has been filed and docketed." (Ex. A, ¶ 2.3)

The Settlement Notices to be approved are short and plain statements of the Settlement containing timely and accurate information regarding: the claims made in the lawsuit, the terms of the Settlement as approved by the Court, the payments from the Net Settlement Fund that the Participating Plaintiffs are individually entitled to collect, how the settlement payments to the Participating Plaintiffs were calculated, the procedure for receiving a settlement payment, the risks of continuing with litigation, and the contact information of both the Settlement Administrator and counsel for Plaintiffs in the event that the recipient has any questions regarding the Agreement. (*Id.*)

To participate in the Settlement, the Participating Plaintiff recipients of the Settlement Notice shall have 60 days to return a Claim Form to the Settlement Administrator. (Ex. A, ¶ 5.2.3) The Settlement Administrator shall remit settlement payments to Participating Plaintiffs who return timely and correctly completed Claim Forms within 14 days after the Settlement Administrator receives the funds for the respective individual settlement payments from Defendant. (Ex. A, ¶ 5.2.5)

### III.    ARGUMENTS AND AUTHORITIES

**A.    Legal Standard for Approval of FLSA Only Settlements.[2]**

Because of the strong public interest in FLSA cases, most courts find that disputes of FLSA cases may only be settled or compromised with the supervision of the Department of Labor or a federal district court. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). This procedural mechanism ensures that an employee may not waive his claims under the FLSA through an employer's coercion. *See Pike v. Cty. of San Bernadino*, No. EDCV 17-

---

[2]    As explained further herein, and pursuant to the Parties' Settlement Agreement, Plaintiffs will amend their Complaint to remove all state specific wage claims plead pursuant to FRCP 23, and will only plead a collective FLSA claim on behalf of the Participating Plaintiffs, see Exhibit B (Plaintiff's Fifth Amended Complaint) (Ex. A, ¶ 4.2).

1680, 2019 WL 8138439, at *1 (C.D. Cal. Nov. 25, 2019). If an FLSA settlement reflects a reasonable compromise, a court may approve the settlement "to promote the policy of encouraging settlement of litigation." *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM GGH, 2012 WL 4465558, at *10 (E.D. Cal. Sept. 25, 2012).

"While the Ninth Circuit has not specifically addressed the question of whether FLSA claims may only be settled and resolved in two ways, district courts in the Ninth Circuit have followed *Lynn's Food Stores.*" *Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 3924609, at *1 n.1 (S.D. Cal. Aug. 11, 2014). *See also, e.g., Khanna*, 2012 WL 4465558, at *10 ("A court may not approve an FLSA settlement without determining whether it is 'a fair and reasonable resolution of a bona fide dispute.'" (quoting *Lewis v. Vison Value, LLC*, No. 1:11-cv-01055-LJO-BAM, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012))); *Campanelli v. Hershey Co.*, No. C 08-1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011) ("This case is not proceeding as a class action under Rule 23 so that Rule's requirement for approval of class action settlements does not obtain. However, courts have held that FLSA settlements which are not approved by the Department of Labor should be presented for court approval and that 'the District Court may enter a stipulated judgment only after scrutinizing the settlement for fairness.'" (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353)).

Applying the test from *Lynn's Food Stores, Inc.*, courts first determine whether a bona fide dispute exists, so as not to "shield employers from the full cost of complying with the statute." *See Pike*, 2019 WL 8138439, at *2. Then, courts consider the totality of the circumstances of the settlement within the context of the FLSA. *Id.* (citing *Seguin v. Cty. of Tulare*, No. 1:16-cv-01262-DAD-SAB, 2018 WL 1919823, at *2 (E.D. Cal. Apr. 24, 2018)).

Case No. 8:18-cv-00871-DOC
Memorandum ISO Plaintiffs' Motion for
Approval of FLSA Settlement

> Courts often consider the following factors when evaluating settlements under [the] FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Id.* (citing *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)). As made clear in *Selk*, courts do not apply these factors rigidly, but rather "adjust[] or depart[] from those factors when necessary to account for the labor rights at issue." 159 F. Supp. 3d at 1173. In considering the factors under a "totality of the circumstances" approach, the district court "must ultimately be satisfied that the settlement's overall effort is to vindicate, rather than frustrate, the purposes of the FLSA. *Id.* (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 3d 1227, 1247 (M.D. Fla. 2010)). To that end, if a proposed collective action settlement "reflect[s] a reasonable compromise over contested issues," it should be approved.[3] *Lee v. The Timberland Co.*, No. 07 Civ. 2367, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008); William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). "Typically, courts regard the adversarial nature of a litigated FLSA case

---

[3]    Approval of an FLSA collective action settlement does not require the full Rule 23 settlement analysis, because an FLSA settlement "does not implicate the same due process concerns as does a Rule 23 settlement." *See, e.g., Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010); *but see Stevens v. Safeway Inc*., No. CV 05-01988 MMM (SHx), 2008 WL 11496497, at *4 (C.D. Cal. Feb. 25, 2008) ("[FLSA] standard is similar to that used in evaluating settlements under Rule 23(e) of the Federal Rules of Civil Procedure.").

Case No. 8:18-cv-00871-DOC
Memorandum ISO Plaintiffs' Motion for
Approval of FLSA Settlement

1    to be an adequate indicator of the fairness of the settlement." *Khait*, 2010 WL

2    2025106, at \*7.

3           Throughout the country, a one-step approval process, rather than the two-

4    step process for settlement approval of class actions, is appropriate in FLSA

5    settlements that do not include classes under Federal Rule of Civil Procedure 23,

6    such as is the case here. *See, e.g.*, *Yue Zhou v. Wang's Rest.*, No. 05 Civ. 0279,

7    2007 WL 172308, at \*1-3 (N.D. Cal. Jan. 17, 2007) (endorsing one-step process

8    for approval of FLSA collective action settlement).[4] This is because collective

9    actions under Section 216(b) of the FLSA ("Section 216(b)"), 29 U.S.C. § 216(b),

10   do not implicate the same due process concerns as Rule 23 class actions. *Selk v.*

11   *Pioneers Mem'l Healthcare Dist*., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).

12   Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective

13   actions require similarly situated employees to affirmatively opt-in and be bound

14   by any judgment, meaning that "the due process implications of a lack of formal

15   notification post-settlement are less worrisome." *Id.*; *O'Connor v. Oakhurst Dairy*,

16   No. 2:140cv000192-NT, 2015 WL 2452678, at \*4 (D. Maine 2015) ("[W]ith an

17   opt-in collective action, only individuals who affirmatively chose to join the

18   litigation will be bound by its outcome."); *see also Genesis Healthcare Corp. v.*

19   

20          [4]    *See also Root v. Ames Dep't Stores, Inc.*, 989 F. Supp. 274, 274 (D.
     Mass. 1997) (noting that FLSA-only settlement did not deprive those who elected
21   not to opt in of any cause of action); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
     No. 16 Civ. 3571, 2016 WL 5109196, at \*1 (N.D. Ill. Sept. 16, 2016) (approving
22   one-step settlement approval process for FLSA collective action); *Bozak v. FedEx
     Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at \*2-3 (D. Conn.
23   July 31, 2014) (same); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at \*1-
     2 (D. Conn. May 23, 2013) (same); *Campbell v. Advantage Sales & Mktg. LLC*,
24   No. 09 Civ. 1430, 2012 WL 1424417, at \*1-2 (S.D. Ind. Apr. 24, 2012) (same);
     *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, 11 Civ. 1281, 11 Civ. 1282, 11 Civ.
25   1283, 11 Civ. 1284, and 11 Civ. 1285, 2012 WL 3060470, at \*2 (D. Conn. July 26,
     2012) (same).
26

27

28
                                          - 9 -                     Case No. 8:18-cv-00871-DOC

*Symczyk*, 133 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]").

Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23."); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class actions that are not present in collective actions brought under Section 216(b)).

Thus, the approval of settlements of FLSA claims is a separate, but related, analysis from the approval of settlements of class action claims. While § 216(b) authorizes collective actions, the FLSA does not expressly set forth criteria for courts to consider in determining whether an FLSA settlement should be approved, nor has the Ninth Circuit established any particular criteria.

**B. The Proposed FLSA Settlement Represents a Compromise of a Bona Fide Dispute, and Provides a Fair and Reasonable Resolution of Plaintiffs' Claims.**

**1. Disputed Issues in this Case, Including Defendant's Status as Employer of Certain Plaintiffs, the Enforceability of Arbitration Agreements Signed by Collective Action Members, and the Applicability of Liquidated Damages Demonstrate the Parties' Entitlement to Settle the Lawsuit.**

The proposed Settlement brings to an end vigorously contested litigation. During the litigation, the Parties have contested, among other issues: (1) the scope of Plaintiffs' claims asserted in their Complaint, primarily concerning joint

employer issues between Defendant's corporate owned stores and its franchisees; (2) whether any FLSA class should be conditionally certified under Section 216(b), including in light of purportedly binding arbitration agreements that include class and collective action waivers; and (3) whether the Participating Plaintiffs performed compensable off-the-clock work.

As discussed above, there must be a bona fide dispute before a Court may permit the parties to compromise the value of a plaintiff's FLSA case. *Pike*, 2019 WL 8138439, at *2 ("The reason for this requirement is to safeguard against an employee waiving his or her claims for wages, overtime compensation, or liquidated damages when there is no actual dispute between the parties." (quoting *Dashiell v. Cty. of Riverside*, No. EDCV 15-00211 JGB (SPx), 2018 WL 3629915, at *3 (C.D. Cal. July 19, 2018))).

In *Pike*, the disputed issues included the plaintiff's contention that the employees' workload would be impossible to complete without working significant overtime, while the defendant's position was that the employees' workloads did not require overtime, and it paid all overtime that was reported. *Id.* at *2-3. As in *Pike*, the Parties' claims and defenses demonstrate significant disputes regarding arbitration, FLSA coverage, liability and damages.

      a.  ***The Joint Employer Dispute Led the Parties to Resolve the Claims of PJI Non-Exempt Hourly-Paid Employees Who Worked at Corporate Owned and Operated Stores as a Collective and to Resolve by Way of Non-Cash Relief the Individual Claims of Opt-in Plaintiffs Who Filed Consents in this Case But Were Not Employed by PJI at a PJI Corporate-Owned Store.***

One of the main disputes in this case is the question of whether Defendant is a joint employer of individuals who worked in stores owned and/or operated by entities with franchise relationships with Defendant. (Slobin Decl., ¶ 19.) Plaintiffs claim that: (1) Defendant retained power to hire and fire workers at franchise locations, by promulgating job descriptions; (2) Defendant maintained control of

Memorandum ISO Plaintiffs' Motion for
Approval of FLSA Settlement

1  the work schedules of workers at franchise locations through the provision of the

2  training materials at issue in this case and frequent onsite supervision; and (3) that

3  Defendant controlled the method and pay of workers at franchise locations,

4  including whether those employees were exempt under the FLSA. (*See* ECF No.

5  149, pp. 15-17 (Pls.' Fourth Am. Compl., ¶¶ 84-87, 93).)

6      On the other hand, Defendant has denied those factual allegations and relied

7  upon a number of rulings, including *In Re Jimmy John's Overtime Litig.*, 2018 WL

8  3231273 (N.D. Ill. June 14, 2018), *In Re Domino's Pizza Inc.*, 2018 WL 4757944

9  (S.D.N.Y. Sept. 30, 2018), and, most recently, the Ninth Circuit holding in *Salazar*

10 *v. McDonald's Corp.*, 944 F.3d 1024 (9th Cir. 2019) ("*Salazar*") for the

11 proposition that it was not the joint employer of workers at franchise locations.

12 (*See also* ECF No. 172, p. 10 (Def.'s Answer to Pls.' Fourth Am. Compl., ¶¶ 84-

13 87, 93).)

14     Plaintiffs believe this case presents unique facts not present in the case law

15 relied upon by Defendant, and that there is the possibility of a finding that

16 Defendant was a joint employer of individuals who worked at franchise locations.

17 However, in light of the risks and potential costs of continued litigation and the

18 recent opinion in *Salazar*, the Parties agreed to resolve the claims of the

19 approximately 120,000 current and former non-exempt hourly-paid employees of

20 PJI who worked at locations owned by PJI (*i.e.*, corporate-owned stores) on an

21 FLSA opt-in collective action basis, while on the other hand, the proposed FLSA

22 Settlement resolves the claims of the Franchisee Plaintiffs, each on an individual

23 basis, for non-cash relief in the form of Gift Cards. (Slobin Decl., ¶ 19.)

24         **b.  *The Parties Disputed Whether Class/Collective Relief Was***
25              ***Precluded for Approximately 77,000 Individuals Who Purportedly***
26              ***Signed Enforceable Arbitration Agreements.***

27

28

Another issue which supports the Parties' resolution of bona fide disputes
through the proposed FLSA Settlement concerns the arbitration agreements with
PJI to which approximately 77,000 Participating Plaintiffs are subject. (Slobin
Decl., ¶ 20.)  PJI argued that these individuals are barred from pursuing collective
action relief as a result of the arbitration agreements that they executed.
Nonetheless, given the risks and continued costs of continued litigation, the Parties
agreed to provide relief to such individuals through the proposed FLSA Settlement.
The proposed FLSA Settlement applied an appropriate discount to those
individuals' recovery under the Settlement Agreement, to reflect the possibility
that their claims would ultimately be compelled to arbitration and would not have
been heard by this Court, if at all.

### c. *The Parties Disputed Liability Due to Defendant's Disclaimer on the Training Website that Time Spent Completing Online Training Was Compensable.*

As in *Pike*, the claims at issue in this lawsuit involved alleged time spent
performing work duties off-the-clock. 2018 WL 3629915, at *2-3. Plaintiffs argued
that Defendant knew or should have known that its workers should have been
compensated for time spent completing online training because of the instruction
on its website that "Your time spent completing mandatory courses on this site as
required by your manager is compensable time," and, accordingly, any failure to
pay for time spent completing training was a willful violation of the FLSA. (*See*
ECF No. 149, pp. 17, 20, 36 (Pls.' Fourth Am. Compl., ¶¶ 90, 97, 176).)

On the other hand, Defendant denied Plaintiffs' allegations, including that
Defendant violated any federal or state laws, and argued that its workers failed to
report or give notice of Plaintiffs' allegations. (*See, e.g.*, ECF No. 172, p. 28
(Def.'s Answer to Pls.' Fourth Am. Compl., ¶ 8).) (*See also* Papa John's
Cornerstone OnDemand Login Page,

https://papajohns.csod.com/client/papajohns/default.aspx ("Papa John's requires
all hourly team members to be clocked in when completing training. Please let
your manager know if you believe you have not been properly compensated for
such time.").)

### d. *Analyzing Training Records Maintained by Cornerstone and Pay Records Maintained by Defendant Led to Significant Disputes Regarding the Proper Measure of Damages in this Case.*

Finally, as discussed further below, the Parties experienced significant
difficulty, and would have experienced significant difficulty in continued litigation,
in establishing the range of damages at issue in this case. Many of the time records
indicated potential time spent completing training modules in excess of twelve
consecutive hours. (Slobin Decl., ¶ 21.) Some records indicated that training had
been completed, but provided no start or stop time. (*Id.*) Some records had a start
time, but no stop time, and vice versa. (*Id.*) On the whole, the training records
maintained by Cornerstone OnDemand, the third-party learning and talent
management software provider that develops and administers PJI's online training
system at issue, were not wholly accurate or reliable for the purposes of identifying
potential off-the-clock training. (*Id*.) As a result, the Parties were likely headed
toward a familiar off-the-clock dispute – as memorialized by *Anderson v. Mt.
Clemens Pottery Co.* – wherein the inadequacy of an employer's records will
require a factual determination based upon an employee's evidence related to the
extent of his off-the-clock work completed "as a matter of just and reasonable
inference." 328 U.S. 680, 687-88 (1946).

Thus, it is plain that this lawsuit raised significant factual and legal disputes,
all of which militate in favor of the reasonable compromise of the putative
collective action members' claims as reflected in the proposed FLSA Settlement
presented in this Motion for Approval.

**2. The Totality of the Circumstances Demonstrates that the Proposed FLSA Settlement Is Fair and Reasonable, Provides Meaningful Relief to the Putative Collective Action Members, and Should Be Approved.**

   ***a. The Proposed Net Settlement Allocates $2,105,400 to the Approximately 120,000 Putative Collective Action Members, Representing Approximately 60% of Plaintiffs' Three Year FLSA Exposure Model, and Reflecting Discounts for Individuals Who Signed Arbitration Agreements.***

Utilizing data and pay records provided by Defendant, Plaintiffs' Counsel, with the assistance of a consulting damages expert, were able to determine an approximate amount potential of damages owed to Participating Plaintiffs for potentially unpaid training time totaling approximately $3,500,000. (Slobin Decl., ¶ 22.) This calculation was extrapolated from records obtained from Defendant's online training administrator, Cornerstone. (*Id*.)

Under the Settlement, Participating Plaintiffs are entitled to submit claims for payments from the Net Settlement Funds, which   amounts to approximately $2,105,400. (Slobin Decl., ¶ 23.) This ***net*** sum recovery amounts to approximately 60% of the damages potentially available to the Participating Plaintiffs, per the training data as analyzed by Plaintiffs' Counsel. (*Id*.) From the records, it was determined by Plaintiffs' Counsel that the average online training course allegedly performed off-the-clock consisted of 7 to 11-minute sessions. (Slobin Decl., ¶ 24.) Because settlement funds shall be distributed proportionately based on the number of workweeks a Participating Plaintiff worked at a PJI corporate-owned store (*i.e.*, the longer an individual works, the more online training she/he can be reasonably assumed to have performed), employees who worked more workweeks at PJI's corporate-owned stores generally will receive higher settlement payments (subject to any applicable discount depending on whether the employees had arbitration agreements with PJI). (*Id*.) Consequently, for individuals who are likely to have performed more of the online training at issue, their high-end recovery in this settlement is a maximum allocation of approximately $166.00. (*Id*.) (*Compare to*

Plaintiff Avalos who estimates her damages to be $126 in off-the-clock work; ECF 66-2 at p. 6.)  For context (and keeping in mind that the average online training course allegedly performed off-the-clock as discerned by Plaintiffs' Counsel from their analysis of the records consisted of 7 to 11-minute sessions), this maximum allocation would reflect approximately 20 hours of allegedly unpaid training time for an employee earning $8.00 per hour. (Slobin Decl., ¶ 24.).

### b.  *The Parties Completed Sufficient Discovery to Appropriately Evaluate the Claims and Defenses that Affect this Proposed FLSA Settlement.*

Although the Parties did not complete formal discovery in the interest of saving considerable attorneys' fees, Defendant produced millions of pay, time and training records for the Participating Plaintiffs in anticipation of mediation. (Slobin Decl., ¶ 9.) The production was adequate to gain an understanding of the spectrum of possible damages in the lawsuit, as well as to understand the significant issues with the adequacy of the records at issue as discussed in Section III.B.1.d., above.

While the data was not obtained through formal discovery, the net result meets the standard requiring "sufficient information to make an informed decision about settlement." *Pike*, 2019 WL 8138439, at *4 (quoting *Saleh v. Valbin Corp.*, No. 17-CV-00593-LHK, 2018 WL 6002320, at *3 (N.D. Cal. Nov. 15, 2018) (*See also* Slobin Decl., ¶ 11.)) The substantial production notably related to the Participating Plaintiffs for a period exceeding three years prior to the filing of the lawsuit, and included all relevant information, including employees' hours of work, rates of pay, and, to the extent available, amounts of time potentially spent completing the online training at issue on a workweek by workweek basis. (Slobin Decl., ¶ 12.)

### c.  *The Substantial Risks Presented by the Lawsuit Necessitated the Compromise of the Putative Collective Action Members' Alleged Back Wages Under the Proposed FLSA Settlement.*

Case No. 8:18-cv-00871-DOC
Memorandum ISO Plaintiffs' Motion for
Approval of FLSA Settlement

As discussed above, and as was the case in *Pike*, the significant factual disputes relating to the measure of potential damages in off-the-clock cases such as this one, coupled with additional litigation risks related to arbitration and the joint employer issues, were substantial risks necessitating compromise.

In *Dashiell*, the court explained that "[c]ourts favor settlement where there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." 2008 WL 3629915, at *4 (quoting *Seguin v. Cty. of Tulare*, No. 1:16-cv-01262-DAD-SAB, 2019 WL 1919823, at *4 (E.D. Cal. Apr. 23, 2018)). Here, due to the significant issues with the records kept by Cornerstone relative to the duration of training time, Plaintiffs may not be able to demonstrate the full extent of their allegedly unpaid training time by availing themselves of Defendant's records, and could fail at trial to demonstrate all of their alleged hours of work if the case were to proceed. *See Pike*, 2019 WL 8138439, at *4 ("As many of these hours were undocumented, Plaintiffs may not recover all of their alleged unpaid overtime if they proceed to trial. Thus, Plaintiffs risk lesser recovery without settlement.").

Furthermore, as in *Pike*, this case was settled on the basis of a three-year statutory period. Because there is a significant likelihood that Plaintiffs would be unable to demonstrate willfulness, there is a correlated high likelihood that many of the Participating Plaintiffs would receive a lower award of damages if the case proceeded to trial, or no damages at all. *See id.* at *4 ("As detailed above, if Plaintiffs were unable to establish Defendant's willfulness, recovery would be less than that proposed by the Settlement Agreement").

### d. *The Scope of the Release Is Appropriately Tailored to the Factual Predicate of the Lawsuit.*

The proposed FLSA Settlement provides that each Participating Plaintiff, by signing the Claim Form, and further by signing the back of the settlement check:

releases all wage and hour claims made against PJI and its affiliates, related companies, and independent contractors, pursuant to any alleged employment/joint-employment relationship or apparent agency, or that reasonably could have arisen out of the same facts alleged in the Fifth Amended Complaint, whether known or unknown, accrued to this date including but not limited to any and all claims under the FLSA; any and all claims arising out of any state wage, minimum wage, or overtime laws; and any claims relating to unpaid wages, minimum wage, and overtime compensation against PJI and its affiliates, related companies, and independent contractors, pursuant to any alleged employment/joint-employment relationship or apparent agency, accrued to this date, including any of these entities' predecessors and successors and, in their capacities as such, all of their present, past, and future directors, officers, employees, representatives, attorneys, insurers, reinsurers, agents and assigns, as well as all of these entities' affiliates, parent or controlling corporations, partners, divisions and subsidiaries (collectively "Released Entities").

(Ex. A, ¶ 6)

As in *Pike*, the release provision is appropriately limited, and the "scope of the release is no greater than the scope of the claims in the Complaint." 2019 WL 8138439, at *4. Furthermore, the release appropriately applies **only** to those who affirmatively submit a Claim Form and accept payment under the proposed FLSA Settlement. (Ex. A, ¶ 6.2) The release does not reflect any overreaching, and weighs in favor of approval.

### e.  Counsel for Plaintiffs View the Proposed FLSA Settlement as a Superior Result Given the Risks Associated with the Case.

Courts accord significant weight to the opinions of Plaintiffs' counsel in FLSA cases. *See Dashiell*, 2018 WL 3629915, at *4 (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1176 (S.D. Cal. 2016).)

Plaintiffs' Counsel have significant experience in class and collective action wage cases. (Slobin Decl., ¶¶ 3-6.) In light of the significant complexity of the case, the bevy of potential issues that could lead to a limited or zero dollar recovery for the Participating Plaintiffs, and in light of the substantial recovery for the Participating Plaintiffs given the class at issue in the lawsuit under the proposed

1    FLSA Settlement, Plaintiffs' Counsel believe the proposed FLSA Settlement to be

2    fair and reasonable. (*Id.*, ¶¶ 17 and 28.)

3       ### f.   *The Parties Negotiated the Proposed FLSA Settlement Over Two*

4          *Separate Arms'-Length Adversarial Mediations – The Settlement Was*

5          *Not Obtained by Fraud or Collusion.*

6       Courts typically find that there is a low likelihood of fraud or collusion

7    where a settlement is obtained through formal mediation before an impartial

8    neutral. *See Dashiell*, 2018 WL 3629915, at *4. Here, as described above, the

9    Parties participated in a massive document production, retained experts to analyze

10   the millions of records produced, and engaged two separate mediators to reach the

11   settlement in this case. (*see* Slobin Decl., ¶¶ 9-16.) There should be no argument

12   that this settlement was the result of fraud or collusion.

13      ### g.  *Service Award*

14      The Settlement Agreement provides that, subject to Court approval, the

15   Collective Action Representative and soon to be named-Plaintiff in the

16   forthcoming Amended Complaint, Sarah Ponder, will receive a $5,000.00 service

17   award in recognition of the work and services that she contributed to the case,

18   which includes, but is not limited to, investigative work, meetings with Plaintiffs'

19   Counsel, assumption of risks, and for serving as Collective Action Representative.

20   (Ex. A, at ¶ 3.4)

21      The service award contemplated by the Settlement is consistent with –

22   indeed, well below – the amount of awards given in comparable cases. *See, e.g.,*

23   *Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 WL 12976106, at *3 (N.D.

24   Cal. 2015) ($27,000 and $25,000 to two class representatives); *Vedachalam v. Tata*

25   *Consultancy Servs.*, No. 06 Civ. 0963, 2013 WL 3929129, at *2 (N.D. Cal. July

26   18, 2013) ($35,000 and $25,000 to class representatives); *Buccellato v. AT&T*

27   *Operations, Inc.*, No. 10 Civ. 00465, 2011 WL 3348055, at *3 (N.D. Cal. June 30,

28

2011) ($20,000 to lead plaintiff); *Ross v. U.S. Bank Nat'l Ass'n*, No. 07 Civ. 2951,
2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) ($20,000 service award for
each of four class representatives); *Glass v. UBS Fin. Servs., Inc.*, No. 06 Civ.
4068, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) ($25,000 to each of
four class representatives; *see also Bellinghausen v. Tractor Supply Co.*, 306
F.R.D. 245, 266-67 (N.D. Cal. 2015) (observing that a $5,000 payment is
"presumptively reasonable" and incentive awards "typically range from $2,000 to
$10,000").

### h.  The Court Should Approve Attorneys' Fees of Thirty Percent (30%)

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in
addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable
attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. §
216(b). An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the
FLSA is mandatory, but the amount of the award is within the discretion of the
judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

Congress enacted fee-shifting statutes in order to ensure that federal rights
are adequately enforced. Under a fee-shifting statute, "a 'reasonable' fee is a fee
that is sufficient to induce a capable attorney to undertake the representation of a
meritorious" action to vindicate the rights protected under the statute. *Perdue v.
Kenny A.*, 130 S. Ct. 1662, 1672 (2010). "Fee awards must be structured so that
attorneys of quality and experience with other profitable demands upon their time
will not need to sacrifice income available in alternative enterprises in order to
effect a public policy intended to protect all citizens." *Casey v. City of Cabool*, 12
F.3d 799, 805 (8th Cir. 1993).

Moreover, "[i]n FLSA cases, like other discrimination or civil rights cases,
the attorneys' fees need not be proportional to the damages plaintiffs recover,
because the award of attorneys' fees in such cases encourages the vindication of

1    Congressionally identified policies and rights." *Spencer v. Cent. Servs., LLC*, 2012

2    U.S. Dist. LEXIS 4927, *11 (D. Md. Jan. 13, 2012). The FLSA is a remedial

3    statute that "'has been construed liberally to apply to the furthest reaches consistent

4    with congressional direction.'" *Johnston v. Spacefone Corp*., 706 F.2d 1178, 1182

5    (11th Cir.1983) (quoting *Mitchell v. Lublin, McGaughy & Assocs*., 358 U.S. 207,

6    211 (1959)). Courts have long recognized that to achieve the remedial goal of the

7    FLSA, attorneys' fees must be awarded. Awarding employees their attorneys' fees

8    is necessary to "provide an adequate economic incentive for private attorneys" to

9    take FLSA cases and "thereby to ensure competent legal representation for

10   legitimate claims." *Odil v. Evans*, No. 3:01CV70 (DF), 2005 WL 3591962, at *3

11   (M.D. Ga. 2005). The vast majority of FLSA claims deal with working class

12   people who ordinarily would not have the financial resources to pay an attorney to

13   pursue their overtime or minimum wage claims. This is especially true given that

14   most FLSA claims do not involve significant amounts of money and often times

15   the attorneys' fees are more than the FLSA claim itself.

16        Under the Settlement Agreement, subject to Court approval, Plaintiffs'

17   Counsel are applying for $1,020,000.00 for attorneys' fees (30% of the Gross

18   Settlement Fund), plus reimbursement of $80,000.00 in litigation expenses. (Ex. A,

19   at ¶ 3.5) This contingency fee agreement is appropriate because Plaintiffs executed

20   legal services agreements with Plaintiff's counsel on a contingency fee

21   arrangement at a percentage higher than what is now being sought by Plaintiff's

22   counsel for Court approval. (Slobin Decl., ¶ 25.)

23        The resolution of this case "is a privately negotiated settlement." *Campanelli*

24   *v. Hershey Co.*, No. C 08-1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal. May 4,

25   2011). Unlike a Rule 23 class, where class members are part of a certified class

26   unless they decide to opt-out, each Participating Plaintiff in this litigation has or

27   will affirmatively choose to join the case. In so doing, they choose to be

28

represented by Plaintiffs' Counsel, subject to an agreement that, rather than charging an ongoing hourly fee, attorneys' fees will be a percentage of any recovery—specifically, thirty percent (30%) of any settlement. (Ex. A, at ¶ 5.2.3)

Plaintiffs' Counsel took this case on a contingency basis. (Slobin Decl., ¶ 26.) Therefore, Plaintiffs' Counsel did not receive any payment for their time spent during the last two years litigating this case, nor did they receive reimbursement for their out of pocket costs during the litigation. (*Id.* at ¶ 26.) Plaintiffs' Counsel alone undertook the financial risk of unsuccessful litigation. (*Id.*) The contingent nature of this litigation makes these fees appropriate. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 900, n.16 (1984). Because Plaintiffs did not pay Plaintiffs' Counsel during the course of this litigation, Plaintiffs' Counsel alone bore the risk that the litigation would be unsuccessful. (Slobin Decl., ¶ 26.)

Attorneys' fees are appropriately awarded from a common fund in FLSA collective litigation. *See Rodriguez v. SGLC Inc.*, 2014 WL 229221, at *2 (E.D. Cal. 2014) (approving attorneys' fees in an FLSA settlement of 34% of the common fund). In group litigation, many class members benefit from the ultimate settlement, but they may not have played a large role in the litigation that led to the payment. *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund approach "thus spread[s] fees proportionately among those benefited by the suit." *Id*. Awarding a percentage of the total fund is routinely approved as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

Finally, while Rule 23 class action approval standards do not apply to collective actions, it is worth noting that 25% is considered the benchmark for attorneys' fees in class cases in the Ninth Circuit. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). However, "in most common fund cases, the award

exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009); *see also Vandervort v. Balboa Capital Corp.*, 8 F.Supp.3d 1200, 1209 (C.D. Cal. 2014) (**"in smaller cases—particularly where the common fund is under $10 million—awards more frequently exceed the benchmark"**) (emphasis added).

### i.   The Court Should Approve $80,000 in Costs

The FLSA also calls for defendants to pay the costs incurred by prevailing plaintiffs. 29 U.S.C. § 216(b). Per the terms of the settlement agreement, Plaintiffs' Counsel are requesting approval of $80,000 in costs. Plaintiffs' Counsel have incurred this amount in unreimbursed costs during this litigation, which they advanced on behalf of Plaintiffs. (Slobin Decl., ¶ 27.) Plaintiffs' Counsel may incur additional costs in finalizing the settlement. Plaintiffs' Counsel therefore request, and Defendant does not oppose, reimbursement of $80,000 in costs.

This amount is reasonable because these costs were incurred to advance litigation on behalf of the Plaintiffs. Additionally, the Settlement Notice to the Participating Plaintiffs makes them aware of the reimbursement to Plaintiffs' Counsel in this amount. *See Ambrosino*, 2014 WL 3924609, at *2. This amount is also appropriate because Plaintiffs' Counsel's private agreements with their clients provide for reimbursements of litigation costs in addition to payment of attorneys' fees on a contingency fee basis. (*Id.*) The Court should honor Plaintiffs' Counsel's private agreements with their clients and approve the reimbursement of $80,000 of costs through this settlement.

/
/
/
/
/

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court approve the Parties' proposed FLSA Settlement Agreement, and approve the form of Notice and other procedures proposed in this Memorandum.

Dated: March 23, 2020                              Respectfully submitted,

                                                   SHELLIST LAZARZ SLOBIN LLP


                                                   By:   /s/ Ricardo J. Prieto
                                                         Todd Slobin
                                                         Ricardo J. Prieto
                                                         Melinda Arbuckle
                                                   Attorneys for Plaintiffs
                                                   SOFIA AVALOS, LOUIS BREAZIL,
                                                   JARED CARROLL, ALVIN
                                                   ENGLISH, and MAX COOVER on
                                                   behalf of themselves and all others
                                                   similarly situated

                                                   &

                                                   VAUGHT FIRM LLC
                                                   Allen R. Vaught
                                                   Attorney for Plaintiffs
                                                   SOFIA AVALOS, LOUIS BREAZIL,
                                                   JARED CARROLL, ALVIN
                                                   ENGLISH, and MAX COOVER on
                                                   behalf of themselves and all others
                                                   similarly situated